UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

**FILED**

March 26, 2026

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY:___Christian Rodriguez___

DEPUTY

| | | |
|---|---|---|
| ROSS RANKIN MOODY, | § | No.  1:25-CV-00743 |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| vs. | § | |
| | § | |
| NATIONAL WESTERN LIFE | § | |
| INSURANCE COMPANY, a | § | |
| Colorado corporation; NON- | § | |
| QUALIFIED DEFINED BENEFIT | § | |
| PLAN FOR THE PRESIDENT OF | § | |
| NATIONAL WESTERN LIFE | § | |
| INSURANCE COMPANY; | § | |
| NATIONAL WESTERN LIFE POST | § | |
| RETIREMENT BENEFIT PLAN | § | |
| FOR ROSS MOODY; and the NON- | § | |
| QUALIFIED PLAN COMMITTEE | § | |
| OF NATIONAL WESTERN LIFE | § | |
| INSURANCE COMPANY, as | § | |
| administrator. | § | |
| | § | |
| *Defendants*. | § | |

_____

<u>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
PARTIAL MOTION TO DISMISS</u>

Before the Court is Defendants National Western Life Insurance

Company ("NWLIC"), the Non-Qualified Defined Benefit Plan for the President of

National Western Life Insurance Company (the "NQDB Plan"), the National

Western Life Post Retirement Benefit Plan for Ross Moody (the "PRB Plan"), and

the Non-Qualified Plan Committee of National Western Life Insurance Company's

(the "NQP Committee") (collectively, "Defendants") Partial Motion to Dismiss

Plaintiff's Amended Complaint Pursuant to Federal Rule of Civil Procedure

12(b)(6) ("Partial Motion to Dismiss").  (Dkt. # 9.)  Pursuant to Local Rule CV-

7(h), the Court finds this matter suitable for disposition without a hearing.  After

careful consideration of the relevant law and the memoranda in support of and in

opposition to the motion, the Court, for the reasons that follow, **GRANTS IN**

**PART** and **DENIES IN PART** Defendants' Partial Motion to Dismiss.

<u>BACKGROUND</u>

Plaintiff Ross Rankin Moody ("Plaintiff") brings this action to recover

certain post-employment benefits.  (Dkt. # 8 at ¶ 1.)    Plaintiff is the former

Chairman and CEO of NWLIC, a life insurance and annuity company.  (<u>Id.</u> at ¶ 2.)

NWLIC is a wholly-owned subsidiary of National Western Life Group, Inc.

("NWLGI").  (<u>Id.</u>)  For simplicity, NWLIC and NWLGI will be referred to herein

as "National Western."[1]  (<u>See</u> <u>id.</u>)

---

[1] In his Amended Complaint, Plaintiff sometimes refers to NWLIC as "National Western," and sometimes refers to NWLIC and NWLGI together as "National Western."  (<u>See</u> Dkt. # 8 at 56, ¶¶ 2, 177.)  Defendant refers to NWLIC as "National Western."  (Dkt. # 9.)  To ensure the distinction between the entities is clear and to track as best it can the language of the Amended Complaint, the Court will refer to Defendant National Western Life Insurance Company as NWLIC and will refer to NWLIC and NWLGI together as "National Western."

2

Plaintiff worked at National Western for over 40 years, including as NWLIC's president.  (Id. at ¶ 3.)  Plaintiff alleges that, as President, he was promised pension benefits set forth in the NQDB Plan, a benefit plan governed by the Employment Retirement Income Security Act ("ERISA").  (Id. at ¶ 4.)  Throughout Plaintiff's tenure with the company, National Western also awarded him long term incentive ("LTI") awards, including performance restricted stock units and stock appreciation rights.  (Id.)  According to the Amended Complaint, these LTI awards were compensation that was earned, accrued, and vested during Plaintiff's employment.  (Id.)

In October 2023, NWLGI entered into a merger agreement with Prosperity Life Group ("Prosperity").  (Dkt. # 8 at ¶ 5.)  As part of the merger agreement, Plaintiff was asked to sign a voting and support agreement in which he agreed to vote his personal shares[2] in favor of the acquisition.  (Id. at ¶ 41.)  Before doing so, Plaintiff conferred with several individuals: Mark Metts ("Metts"), National Western's outside counsel; Rey Perez ("Perez"), NWLIC's then-President and Chief Operating Officer; and Patrick Johnson ("Johnson"), the NQDB Plan Administrator and National Western's Vice President – Human Resources.  (Id.)  Plaintiff alleges that he specifically asked these individuals about "how his LTI compensation and severance payments paid under the proposed Merger Agreement

---

[2] Plaintiff is also the largest shareholder of NWLGI.  (Dkt. # 8 at ¶ 5.)

[(the "Merger Compensation")] would be treated in calculating his accrued benefit under the NQDB Plan." (Id.) According to Plaintiff, these individuals each assured him that all Merger Compensation, which included the settlement of his LTI awards and payments under the Change in Control & Severance Agreement ("CIC Agreement"),[3] would be included in the calculation of his retirement benefit under the NQDB Plan. (Id.; see id. at ¶¶ 53, 58.) Relying on these assurances, Plaintiff signed the voting and support agreement. (Id. at ¶ 41.)

In the months leading up to the acquisition's closing, Plaintiff allegedly received further assurances from Metts, Johnson, Perez, and others that his Merger Compensation would be included in the Plan benefit calculation. (Id. at ¶¶ 53–57.) Plaintiff also received two benefit statements estimating his projected accrued benefit.[4] (Id. at ¶¶ 54, 60.) Both of these benefit statements included Plaintiff's Merger Compensation in his projected benefit and estimated that Plaintiff would receive between $519,820.93 to $537,608.66 per month. (Id.) Based on these representations, Plaintiff refrained from exercising his vested LTI awards prior to the acquisition. (Id. at ¶ 58.)

---

[3] This CIC Agreement was a renewal of a prior change in control agreement executed before the Merger Agreement and was disclosed to Prosperity in the Merger Agreement. (Dkt. # 8 at ¶ 45.)

[4] The first of these statements was prepared by the Plan actuary, CBIZ, Inc. ("CBIZ"), at the direction of Johnson, and the second was prepared by CBIZ at the direction of Prosperity. (Id. at ¶¶ 54, 59–60.)

After the merger closed, a new committee (the "NQP Committee") was formed to oversee Plaintiff's retirement benefits. (Id. at ¶ 76.) This new committee, comprised of Prosperity's top executives, terminated CBIZ's services, engaged a new Plan actuary, Milliman, and allegedly instructed Milliman how to calculate Plaintiff's NQDB Plan benefit payment. (Dkt. # 8 at ¶¶ 77, 79.) Specifically, according to Plaintiff, the NQP Committee directed Milliman not to include in its calculation any pay that Plaintiff earned and accrued *during* his employment but received *after* his termination. (Id. at ¶ 80.)

The exclusion of this compensation, which importantly excluded Plaintiff's Final Paycheck Compensation[5] and Merger Compensation, resulted in an updated monthly retirement benefit calculation of $175,797.91. (Id. at ¶ 81, 112–13.) Upon receiving notice of this new calculation, Plaintiff filed a written claim for benefits challenging the NQP Committee's determination. (Id. at ¶ 82.) The NQP Committee denied the claim, and Plaintiff then lodged an administrative appeal, which the NQP Committee also denied. (Id. at ¶¶ 84–89, 90, 96.)

On May 15, 2025, Plaintiff filed suit in this Court, alleging, *inter alia*, that the NQP Committee wrongfully excluded from its benefit calculation all the compensation Plaintiff earned prior to his termination. (Dkt. # 1.) Defendants

---

[5] The Final Paycheck Compensation includes Plaintiff's accrued salary, unused vacation pay, holiday pay, and Merger Compensation (i.e., the settlement of his LTI awards and payments under the CIC Agreement). (Id. at ¶¶ 49, 53.)

filed a motion to dismiss on July 15, 2025.  (Dkt. # 6.)  Plaintiff then filed an

Amended Complaint asserting eight claims for relief: (I) Denial of Benefits Under

ERISA Section 502(a)(1)(B); (II) ERISA Estoppel Under Federal Common Law

and as Equitable Relief Under ERISA Section 502(a)(3); (III) Denial of a Full and

Fair Review Under ERISA Section 503; (IV) Declaratory Relief under ERISA

Section 502(a)(1)(B); (V) Breach of Fiduciary Duty Under ERISA Section

502(a)(2); (VI) Equitable Relief Under ERISA Section 502(a)(3); (VII) Violation

of Reporting and Disclosure Provisions and Claim for Civil Money Penalty; and

(VIII) Attorneys' Fees.  (Dkt. # 8.)  On August 19, 2025, Defendants filed a partial

motion to dismiss Counts II and III of Plaintiff's Amended Complaint, addressing

only the NQDB Plan dispute.[6]  (Dkt. # 9.)  On September 2, 2025, Plaintiff filed a

response, and Defendants subsequently filed a reply.  (Dkts. ## 10, 12.)

---

[6] Although not at issue in the instant Partial Motion to Dismiss, Plaintiff also brings
claims related to the alleged failure to provide certain insured lifetime health
benefits pledged to him.  (Dkt. # 8 at ¶¶ 1, 15.)  Specifically, Plaintiff alleges that
National Western violated a contractual agreement by letting Plaintiff's base
medical, dental, and vision insurance coverage and third-party excess benefits
coverage (referred to collectively as the "PRB Plan") expire.  (Id. at ¶¶ 15, 138.)
Accordingly, Plaintiff seeks to clarify his rights to benefits under the PRB Plan
and/or reform the PRB Plan to be consistent with the Defendants' promises and
ERISA.  (Id. at ¶ 18.)  Plaintiff also asks for statutory penalties for Defendants'
alleged non-compliance with ERISA disclosure requirements pertaining to the PRB
Plan.  (Id.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." When analyzing a motion to dismiss for failure to state a claim, the court "accept[s] 'all well pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" United States ex rel. Vavra v. Kellogg Brown & Root, Inc., 727 F.3d 343, 346 (5th Cir. 2013) (quoting In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007)). The court "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Funk v. Stryker Corp., 631 F.3d 777, 783 (5th Cir. 2011) (quoting Tellabs Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

A complaint need not include detailed facts to survive a Rule 12(b)(6) motion to dismiss. See Twombly, 550 U.S. at 555–56. In providing grounds for relief, however, a plaintiff must do more than recite the formulaic elements of a cause of action. See id. at 556–57. "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678 (internal quotations and citations omitted). Thus, although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory allegations." Tuchman v. DSC Commc'ns Corp., 14 F.3d 1061, 1067 (5th Cir. 1994); see also Plotkin v. IP Axess Inc., 407 F.3d 690, 696 (5th Cir. 2005) ("We do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.").

When a complaint fails to adequately state a claim, such deficiency should be "exposed at the point of minimum expenditure of time and money by the parties and the court." Twombly, 550 U.S. at 558 (citation omitted). However, the plaintiff should generally be given at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice. Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 329 (5th Cir. 2002).

8

<u>DISCUSSION</u>

Defendants move to dismiss Counts II and III of the Amended Complaint.  (Dkt. # 9.)  The Court will analyze each Count in turn.

I.    <u>Count II: ERISA Estoppel</u>

Plaintiff's second claim for relief, ERISA Estoppel, seeks equitable relief via two different sources: ERISA Section 502(a)(3) and federal common law.  (Dkt. # 8 at ¶ 162.)  In this claim, Plaintiff asserts that, even if Defendants' benefit determination did not violate ERISA Section 502(a)(1)(B), as Plaintiff contends in Count I, this Court should still exercise its authority under Section 502(a)(3) and/or its common law equitable power to estop Defendants from excluding Plaintiff's LTI compensation from his monthly pension calculation.  (<u>Id.</u> at ¶¶ 161–67.)  More specifically, Plaintiff alleges that if the NQDB Plan is interpreted to exclude the LTI compensation, the contrary representations made by various individuals constitute material representations, upon which Plaintiff reasonably and detrimentally relied.  (<u>Id.</u> at ¶¶ 163, 165.)  Accordingly, the Court should apply ERISA estoppel.

In their Partial Motion to Dismiss, Defendants argue that: (1) Count II is legally barred as an impermissible duplication of Plaintiff's Count I denial of benefits claim; and (2) Count II fails to allege two essential elements of ERISA

estoppel: material misrepresentation and reasonable reliance.  (Dkt. # 9 at 13–19.)
The Court begins with Defendants' first argument.

A.    Duplicative Claim

Defendants argue that under Fifth Circuit law, a plaintiff cannot bring a claim under ERISA Section 502(a)(3) when there is an adequate remedy under ERISA Section 502(a)(1)(B).  (Dkt. # 9 at 7, 13–16.)  Here, Plaintiff brings Count I pursuant to Section 502(a)(1)(B) and Count II pursuant in part to Section 502(a)(3).  (Dkt. # 8 at 55, 57.)  Therefore, according to Defendants, because Count II seeks the same remedy as Count I—an increased retirement benefit—and is based on the same harm as Count I—the denial of this increased benefit—Count II must be dismissed.  (Dkt. # 9 at 7, 13–16.)

ERISA Section 502(a) governs the statute's civil enforcement causes of action.  29 U.S.C. § 1132(a).  Section 502(a)(1)(B) allows a beneficiary to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  Id. § 1132(a)(1)(B).  Under this provision, courts are authorized to interpret and enforce the plan as written, not to modify its terms.  See id.; CIGNA Corp. v. Amara, 563 U.S. 421, 436 (2011).

Section 502(a)(3), on the other hand, allows a beneficiary to bring a civil action: "(A) to enjoin any act or practice which violates any provision of this

subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3).  Unlike Section 502(a)(1)(B), which is narrow in scope, Section 502(a)(3) is a broad, "catchall provision[]," offering "appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." Varity Corp. v. Howe, 516 U.S. 489, 512 (1996); Manuel v. Turner Indus. Grp., L.L.C., 905 F.3d 859, 864 (5th Cir. 2018).

Applying Varity, the Fifth Circuit has explained that "[a] claimant whose injury creates a cause of action under ERISA § 502(a)(1)(B) may not proceed with a claim under ERISA § 502(a)(3)." Manuel, 905 F.3d at 865 (quoting Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Georgia, Inc., 892 F.3d 719, 733–34 (5th Cir. 2018)); see Pedersen v. Kinder Morgan Inc, 622 F. Supp. 3d 520, 532 (S.D. Tex. 2022).  This rule applies even when a plaintiff does not ultimately prevail on their Section 502(a)(1)(B) claim. Innova, 892 F.3d at 733 ("Simply because a plaintiff does not prevail on a § 1132(a)(1) claim does not make viable an alternative claim under § 1132(a)(3)."); see Flores v. Hartford Life & Accident Ins. Co., No. 3:23-CV-2687-X, 2025 WL 346934, at *2 (N.D. Tex. Jan. 30, 2025) ("Alternative pleading of a catch-all claim is not allowed in ERISA cases.").

11

To determine whether a Section 502(a)(3) claim is duplicative of a Section 502(a)(1)(B) claim and therefore barred, courts must look at the underlying alleged injury.  Manuel, 905 F.3d at 865.  For example, in Innova, the Fifth Circuit upheld the district court's dismissal of the plaintiff's Section 502(a)(3) breach of fiduciary duty claim, finding that, although that claim facially sought different relief than the Section 502(a)(1)(B) claim, it was "essentially [a] claim[] for benefits denied."  892 F.3d at 733.  In other words, the claims had the same underlying injury: the alleged failure to adequately pay benefits.  Id. at 733–34.  As such, the plaintiff had an "adequate mechanism for redress under [Section 502(a)(1)(B)] and thus [could] not simultaneously plead claims under [Section 502(a)(3)]."  Id.

Since the Fifth Circuit's decision in Innova, district courts in this Circuit have consistently held that plaintiffs may not plead duplicative Section 502(a)(1)(B) and 502(a)(3) claims, the latter of which often stem from an alleged breach of fiduciary duty.  See, e.g., Innova, 892 F.3d at 733–34; Pedersen, 622 F. Supp. 3d at 533; Windmill Wellness Ranch, L.L.C. v. Blue Cross & Blue Shield of Texas, No. SA-19-CV-01211-OLG, 2020 WL  7017739, at *6 (W.D. Tex. Apr. 22, 2020); Sky Toxicology, Ltd. v. UnitedHealthcare Ins. Co., No. 16-cv-1094, 2018 WL 4211741, at *1 (W.D. Tex. Sept. 4, 2018), report & recommendation adopted, Dkt. # 55 (Dec. 27, 2018).  However, "recovery under those two subsections is not

necessarily mutually exclusive if the monetary relief under Section 502(a)(1)(B) is not an 'adequate remedy' for the injuries alleged." R.C. v. Louisiana Health Servs. & Indem. Co., No. CIVIL ACTION 23-564-SDD-SDJ, 2024 WL 4009945, at *8 (M.D. La. Aug. 30, 2024) (denying in part a motion to dismiss because the underlying Section 502(a)(3) injury was rooted in an alleged statutory violation); see Bennett v. Louisiana Health Serv. & Indem. Co., 450 F. Supp. 3d 686, 690–91, 698–99 (M.D. La. 2020) (denying a motion to dismiss simultaneous Section 502(a)(1)(B) and 502(a)(3) claims in an alleged prescription overcharging scheme).

Defendants contend that Count II is duplicative of Count I, and as such, Plaintiff cannot bring it. In Count I of his Amended Complaint, Plaintiff alleges that Defendants misinterpreted the NQDB Plan language and improperly reduced his monthly pension. (Dkt. # 8 at ¶ 150.) With this cause of action, Plaintiff seeks to recover all his past due benefits (i.e., the $573,109.48[7] monthly pension benefit), enforce rights, and clarify his rights to future benefits under the terms of the NQDB Plan. (Id. at ¶ 160.) In Count II, Plaintiff brings a claim for ERISA estoppel under federal common law and ERISA Section 502(a)(3), alleging that, even if Defendants correctly interpreted the NQDB Plan, individuals acting on behalf of Defendants made material misrepresentations to Plaintiff upon which he

---

[7] This number comes from an updated calculation conducted by Michael Muth, F.S.A. a certified actuary with Rudd and Wisdom, Inc., an actuarial consulting firm. (Dkt. # 8 at ¶ 111.)

13

reasonably and detrimentally relied.  (Id. at ¶ 163.)  With this cause of action, Plaintiff seeks to estop Defendants from denying him the benefits he was promised.  (Id. at ¶ 162.)

Upon its review, the Court finds that Fifth Circuit law prohibits Plaintiff from asserting a claim under Section 502(a)(3) in these circumstances. Here, Plaintiff's Section 502(a)(3) claim is based on the same inherent injury as his Section 502(a)(1)(B) claim: the allegedly incorrect calculation of his benefits. Although Plaintiff may label his relief differently (equitable rather than legal), in essence, Plaintiff seeks the same remedy with both claims: the "proper" calculation of his benefits.  See Innova, 892 F.3d at 733–34. ("'[C]ourts must focus on the substance of the relief sought and the allegations pleaded, not on the label used.'" (quoting Gearlds v. Entergy Servs., Inc., 709 F.3d 448, 452 (5th Cir. 2013))).

Put differently, if Plaintiff's Section 502(a)(1)(B) claim is successful, the LTI compensation would be included in his retirement benefit calculation, along with his severance pay and other final paycheck compensation.  (See Dkts. ## 10 at 9; 8 at 55–56.)  This relief fully encompasses the relief Plaintiff seeks in his Section 502(a)(3) claim, leaving nothing further for the Court to award.  (See id.; Dkt. # 8 at 57–79.)  Therefore, Plaintiff has an adequate remedy under Section 502(a)(1)(B), and under current precedent, he cannot proceed with his Section

14

502(a)(3) claim.[8]  See Innova, 892 F.3d at 733 ("[I]f a plaintiff can pursue benefits

under the plan pursuant to [Section 502(a)(1)(B)], there is an adequate remedy

under the plan which bars a further remedy under [Section 502(a)(3)]."); Flores,

2025 WL 346934, at *2 (dismissing a Section 502(a)(3) claim because if the

plaintiff's claim for benefits prevails, there is no further relief the plaintiff could

seek and no more work for an equitable remedy to do); Windmill Wellness Ranch,

2020 WL 7017739, at *6 (dismissing the Section 502(a)(3) claims because those

claims sought the same damages as the plaintiff sought in its ERISA benefits

claim); cf. R.C., 2024 WL 4009945, at *7 (declining to dismiss Section 502(a)(3)

---

[8] The Court does not find persuasive Plaintiff's argument that Innova and its
progeny do not apply simply because Count II is not a claim for breach of fiduciary
duty.  (Dkt. # 9 at 11.)  While Innova did involve a Section 502(a)(3) fiduciary duty
claim, and many of the cases applying Innova have involved similar claims, the
Fifth Circuit's language in Innova was broad.  See 892 F.3d at 733 (discussing
Section 502(a)(3) claims generally rather than focusing on Section 502(a)(3)
fiduciary duty claims).  And, in the years since Innova was decided, courts have
applied the Fifth Circuit's reasoning in that case to Section 502(a)(3) claims
beyond fiduciary duty claims.  See Flores, No. 3:23-CV-2687-X, 2025 WL 346934,
at *2, Dkt. # 18 at *6 (dismissing a Section 502(a)(3) claim for unfair or deceptive
settlement practices as duplicative of the plaintiff's Section 502(a)(1)(B) claim);
Ferris v. Blucora, Inc. Key Leadership Change of Control Severance Plan, 736 F.
Supp. 3d 506, 519–20 (E.D. Tex. 2024) (dismissing a Section 502(a)(3) claim
related to an allegedly flawed plan interpretation as duplicative of the plaintiff's
Section 502(a)(1)(B) claim); Windmill Wellness Ranch, 2020 WL 7017739, at *6
(dismissing a Section 502(a)(3) claim for failure to provide a full and fair review of
claims as duplicative of the plaintiff's Section 502(a)(1)(B) claim); Sky
Toxicology, 2018 WL 4211741, at *6 (W.D. Tex. Sept. 4, 2018) (similar); Mission
Toxicology, L.L.C. v. UnitedHealthcare Ins. Co., No. 5:17-CV-1016-DAE, 2018
WL 2222854 (W.D. Tex. Apr. 20, 2018) (similar).  The Court therefore does not
read the Fifth Circuit's holding in Innova so narrowly.

claim where the Section 502(a)(1)(B) claim seeks to remedy the wrongful denial of benefits and the Section 502(a)(3) claim instead seeks to remedy a present and future injury stemming from an alleged statutory violation).  Plaintiff's cited cases, all issued prior to Innova, do not convince the Court otherwise.  (See Dkt. # 10 at 9–10.)

However, here, Plaintiff brings his ERISA estoppel claim not just under Section 502(a)(3) but also under federal common law.  (Dkt. # 8 at ¶ 162.) And while the Court agrees with Defendants that Plaintiff cannot assert an estoppel claim under Section 502(a)(3) in these circumstances, it does not agree that Plaintiff is similarly precluded from bringing his estoppel claim under common law.

In Mello v. Sara Lee Corp., the Fifth Circuit "explicitly adopt[ed] ERISA-estoppel as a cognizable theory."  431 F.3d 440, 444 (5th Cir. 2005). ERISA estoppel is a traditional equitable remedy arising under federal common law.  Jones v. Int'l Bus. Machines Corp., No. 1:19-CV-00251-RP, 2020 WL 6729088, at *6 (W.D. Tex. Nov. 15, 2020), report and recommendation adopted, No. 1:19-CV-251-RP, 2020 WL 8361930 (W.D. Tex. Dec. 29, 2020).  It is its own cause of action, separate from those created by the statutory provisions of ERISA, see Mello, 431 F.3d at 444, and courts in this Circuit have treated it as such, see, e.g., Brown v. Aetna Life Ins. Co., 975 F. Supp. 2d 610, 625, 625 n.15

16

(W.D. Tex. 2013) (noting that the ERISA estoppel doctrine does not appear to be tied to the equitable relief provisions of Section 502(a)(3) and that Mello suggests that ERISA estoppel is not predicated on any statutory cause of action at all).

Defendant argues that Innova and its progeny apply equally to federal common law ERISA estoppel claims, (Dkt. # 12 at 7), but the Court is unpersuaded. Prior to the Fifth Circuit's ruling in Innova, courts routinely allowed ERISA estoppel claims to proceed alongside Section 502(a)(1)(B) claims. See, Brown, 975 F. Supp. 2d at 625 ("[Defendant] has identified no cases in which a court dismissed an ERISA-estoppel claim because other relief was available . . . and the Court has found none. To the contrary, courts have analyzed both ERISA estoppel and denial of benefits claims without considering the possibility that the latter could preempt the former."); Simmons v. Outreach Health Cmty. Care Serv. LP, No. 15-cv-286, 2016 WL 3162147, at *8 (W.D. Tex. June 3, 2016) (rejecting the defendant's argument that the plaintiff's ERISA estoppel claim was duplicative of his denial of benefits claim); Mora v. Albertson's, L.L.C., No. EP-15-CV-00071-FM, 2015 WL 3447963, at *4–5 (W.D. Tex. May 28, 2015) (same). And although Innova limited a plaintiff's ability to bring a Section 502(a)(3) claim in tandem with a Section 502(a)(1)(B) claim, as discussed above, there is nothing in the Fifth Circuit's language in that case that suggests it should be extended to an estoppel claim asserted under federal common law. See 892 F.3d at 732–34; Brown, 975 F.

17

Supp. 2d at 625 (noting that the ERISA estoppel doctrine is not tied to the equitable relief provisions of Section 502(a)(3)); Mora, 2015 WL 3447963, at *5 ("By contrast, no element of Plaintiff's ERISA estoppel claim requires proof of an entitlement to benefits under the Plan's terms.").

Indeed, even after Innova, courts in this Circuit have continued to evaluate ERISA estoppel claims alongside Section 502(a)(1)(B) claims "without considering the possibility that the latter could preempt the former." Brown, 975 F. Supp. 2d at 625; see Talasek v. Unum Life Ins. Co. of Am., No. CV H-18-3306, 2020 WL 889413 (S.D. Tex. Jan. 21, 2020), report and recommendation adopted, No. CV H-18-3306, 2020 WL 883476 (S.D. Tex. Feb. 21, 2020) and Talasek v. Unum Life Ins. Co. of Am., No. 4:18-CV-3306, 2020 WL 7775450, at *2 (S.D. Tex. Dec. 15, 2020), report and recommendation adopted, No. 4:18-CV-3306, 2020 WL 7773899 (S.D. Tex. Dec. 30, 2020), aff'd sub nom. Talasek v. Nat'l Oilwell Varco, L.P., 16 F.4th 164 (5th Cir. 2021) (dismissing in an earlier order a Section 502(a)(3) claim because it was duplicative of the plaintiff's Section 502(a)(1)(B) claim but later permitting an ERISA estoppel claim brought pursuant to federal common law to proceed without considering whether it was similarly duplicative of the Section 502(a)(1)(B) claim); Callery v. Exxonmobil Corp., No. CV H-21-1086, 2021 WL 3711180, at *5, 7–8 (S.D. Tex. Aug. 20, 2021) (finding that the plaintiffs were not permitted to bring a Section 502(a)(3) claim because

they could obtain relief under Section 502(a)(1) but analyzing the common law

ERISA estoppel claim without discussing whether it was similarly duplicative); see

also Jones, 2020 WL 6729088, at *6 ("[C]ourts have suggested that the ERISA-

estoppel doctrine does not appear to be tied to the equitable relief provisions of

§ 1132(a)(3)." (quoting Brown, 975 F. Supp. at 625) (internal quotations omitted)).

Against this backdrop, the Court will not, at this early stage, prohibit Plaintiff from

bringing his ERISA estoppel claim under federal common law.  To do so would

extend Innova beyond its plain terms and adopt an interpretation no court in this

Circuit has thus far adopted.[9]  The Court will not take that step here.

   B.   Sufficiency of the Allegations

      Defendants next contend that, should Plaintiff be able to assert an

ERISA estoppel claim, the Amended Complaint does not sufficiently allege two

necessary elements: material misrepresentation and reasonable reliance. (Dkt. # 9

---

[9] Of course, the Court is aware of a handful of out-of-circuit cases where courts
dismissed common law ERISA estoppel claims because Section 502(a)(1)(B)
provided the plaintiff with a sufficient remedy.  (See Dkt. # 12 at 4, citing
Tamrazian v. UNUM Life Ins. Co. of Am., No. 2:19-cv-5583, 2020 WL 4288441,
at *4 (C.D. Cal. Apr. 14, 2020); Glass v. Kellogg Co. Bakery, Confectionery,
Tobacco Workers and Grain Millers Pension Plan, No. 8-cv-302, 2009 WL
2567191, at *15 (W.D. Mich. Aug. 17, 2009); Hurley v. Life Ins. Co. of North Am.,
No. 4-cv-252, 2005 WL 8177877, at *13 (D.D.C. July 7, 2005).)  However, the
Court is not persuaded by the reasoning in those non-binding cases, particularly
where the precise contours of a common law ERISA estoppel claim vary from
circuit to circuit.  See, e.g., Tamrazian, 2020 WL 4288441, at *4 (explaining the
Ninth Circuit's narrowing of ERISA estoppel claims).

at 16–19.)  To state an ERISA estoppel claim, the plaintiff must establish: "(1) a material misrepresentation; (2) reasonable and detrimental reliance upon the representation; and (3) extraordinary circumstances."  Mello, 431 F.3d at 444. Defendants do not dispute the existence of the third element, "extraordinary circumstances."  (Dkt. # 9 at 16–19.)

### 1. Material Misrepresentation

In the context of an ERISA estoppel claim, a material misrepresentation occurs when "there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision." Mello, 431 F.3d at 445 (citation and internal quotation marks omitted).  A plaintiff is "able to satisfy the material misrepresentation element if [his or her] employer[] misrepresented any pertinent information."  Id.  Material misrepresentations can "stem directly from the insurance plan itself" or from "informal documents." Talasek, 16 F.4th at 168.

Here, Plaintiff has sufficiently pleaded material misrepresentation.  As alleged in the Amended Complaint, prior to the merger's close in July 2024, Defendants' agents and officers repeatedly represented to Plaintiff that all of his Merger Compensation, which included the LTI compensation, would be included in the calculation of his NQDB Plan benefit.  (Dkt. # 8 at ¶¶ 52–57, 163.)  They not only assured Plaintiff that this compensation would be included but also

represented to him that the NQDB Plan *requires* the inclusion of this compensation and that no future Plan administrator could, in good faith, interpret the NQDB Plan in any other way.  (Id. at ¶¶ 163, 53, 56.)

In addition to these statements, Defendants provided Plaintiff with two projected estimates of his monthly retirement benefits, both of which factored in his Merger Compensation.  (Id. at ¶¶ 163, 54–55, 59–60.)  First, on February 26, 2024, Johnson, the then-administrator of the NQDB Plan, provided Plaintiff with a projected monthly retirement benefit calculation of $519,823.93, which included the Merger Compensation and unexercised LTI awards.  (Id. at ¶¶ 54–55.)  Then, in June of 2024, Prosperity requested that the Plan Actuary, CBIZ, prepare an updated actuarial valuation of Plaintiff's NQDB Plan, which was again provided to Plaintiff.  (Id. at ¶¶ 59–60.)  This second valuation calculated Plaintiff's monthly retirement benefit as $537,608.66, and, as with the first estimate, included Plaintiff's Merger Compensation.  (Id. at ¶ 60.)

Based on these statements and representations, the Court concludes that there is a substantial likelihood that any reasonable employee would be misled in making an adequately informed decision.  Therefore, Plaintiff has sufficiently alleged material misrepresentation.

Defendants argue that the statements Plaintiff points to cannot constitute material misrepresentations because at the time they were made, the

21

speakers believed the statements to be true.  (Dkt. # 9 at 17.)  However, under current Fifth Circuit law, a plaintiff is not required to show that the statements were made with knowledge of their falsity.  See Mello, 431 F.3d at 445 (defining the elements of an ERISA estoppel claim in the Fifth Circuit).  Here, Plaintiff was promised, repeatedly and in different forms, that his Merger Compensation would be included in the calculation of his monthly retirement benefit.  It was not.  Defendants' statements to the contrary, then, constitute material misrepresentations.  See id. at 442, 444 (finding that the defendant's "*errors*" with respect to the proper calculation of the benefits plaintiff would be due constituted material misrepresentations); BLACK'S LAW DICTIONARY, 7th ed. (defining "misrepresentation" as "The act of making a false *or misleading* statement . . ." (emphasis added)).

### 2.    Reasonable and Detrimental Reliance

In the Fifth Circuit, a plaintiff must show that their reliance was both reasonable and detrimental.  Mello, 431 F.3d at 445.  Plaintiff has adequately pleaded both reasonable and detrimental reliance.

### i.    Reasonable

Reliance is seldom reasonable when it is "inconsistent with the clear and unambiguous terms of plan documents."  Id. at 447 (citing Sprague v. GMC, 133 F.3d 388, 404 (6th Cir. 1998)); see also Weir v. Fed. Asset Disposition Ass'n,

123 F.3d 281, 289 (5th Cir. 1997) ("An estoppel cause of action is not cognizable under ERISA in suits seeking to enforce rights to benefits based on purported oral modifications of plan terms."). In other words, even if material misrepresentations were made, a plaintiff cannot invoke estoppel when the plan's terms are unambiguous, and the representations made contradict or conflict with those terms. Id. If, however, the plan's terms are ambiguous, then reliance based on material misrepresentations could be reasonable. See Mello, 431 F.3d at 447–48 (citing Curcio v. John Hancock Mut. Life Ins. Co., 33 F.3d 226, 236 (3d Cir. 1994)).

Whether a contract provision is ambiguous is a question of law. McLane Foodservice, Inc. v. Table Rock Restaurants, L.L.C., 736 F.3d 375, 377 (5th Cir. 2013). "An ERISA plan is not ambiguous if, 'when examined in [its] entirety, [it is] susceptible to only one reasonable interpretation.'" Loria v. Children's Hosp., No. CIV.A.02-3194, 2003 WL 22038424, at *5 (E.D. La. Aug. 28, 2003) (quoting Weir, 123 F.3d at 286). "That the parties may have interpreted the plans differently is of no moment;" rather, the question for the court is whether the "written instrument is so worded that it can be given a certain definite legal meaning or interpretation." Weir, 123 F.3d at 286.

As a threshold matter, the Court agrees with Plaintiff that a contractual ambiguity exists. Under the terms of the NQDB Plan, Plaintiff is entitled to payment of an "Early Retirement Benefit." (Dkts. ## 8 at ¶ 28; 8-1 at § 4.3.) This

23

retirement benefit incorporates Plaintiff's "Compensation," which is defined in the Plan as "Twelve (12) times the average of the Participant's monthly compensation over the sixty (60)-consecutive calendar months during which the average of his monthly compensation is the highest." (Id.; Dkt. # 8-1 at § 1.2(e).)  "Monthly compensation" is further defined in the Plan as "the total remuneration paid by the Employer during each month of the Plan Year[10] and reported as taxable income on Internal Revenue Service Form W-2 or its subsequent equivalent."  (Dkt. # 8-1 at § 1.2(e).)  The Plan explains that "monthly compensation" includes "director's fees; amounts deferred under Code sections 125, 132(f)(4), or 401(k); and nonqualified elective deferrals" but excludes "reimbursements or other expense allowances, moving expenses, welfare benefits, nonqualified retirement benefits, bonuses relating to or in lieu of nonqualified retirement benefits, and imputed value of insurance."  (Id.)

Plaintiff contends that, under these definitions, all of the compensation paid to him on July 18, 2024,[11] the Final Paycheck Compensation, counts as

---

[10] "Plan Year" is defined as "[t]he twelve-month period beginning on January 1 and ending on December 31 each year."  (Dkt. # 8-1 at § 1.2(t).)

[11] On July 18, 2024, Plaintiff received his final paychecks.  (Dkt. # 8 at ¶ 49.) These paychecks "included his accrued salary, unused vacation pay, holiday pay, compensation paid in connection with the settlement of his LTI awards, and compensation paid pursuant to the CIC Agreement, all of which was disclosed in the Merger Agreement and constituted remuneration for services Plaintiff provided prior to his separation date (the 'Final Paycheck Compensation')."  (Id.)

"Compensation" that must be incorporated into the calculation of his early retirement benefit.  (Dkt. # 8 at ¶¶ 97–105.)  This is so because, even though this compensation was paid to Plaintiff eight days after his termination date, it was earned during his employment, accrued and payable on or before Plaintiff's termination, paid during a Plan Year, reported as taxable income on his 2024 W-2, and does not fall within one of the categorical exclusions outlined in the Plan.  (Id.) Accordingly, the Final Paycheck Compensation "must be included in the calculation of Plaintiff's average monthly compensation and in the calculation of the benefit he had accrued prior to termination of employment."  (Id. at ¶ 105.)

Meanwhile, Defendants argue that once Plaintiff terminated his employment, he "immediately stopped earning additional benefits under the Plan." (Dkt. # 9 at 9–10.)  To make this argument, Defendants point to Section 2.2 of the Plan, which provides that upon a termination of employment, the "employee shall lose his status as a Participant, and no further benefit accruals for the employee shall be allowed under the Plan."  (Dkt. # 8-1 at § 2.2.)  Thus, according to Defendants, any compensation paid *after* Plaintiff's termination, i.e., the Final Paycheck Compensation, does not qualify as "Compensation" for purposes of calculating Plaintiff's early retirement benefit.  (Dkt. # 9 at 9, 18–19.)  Defendants contend that the Plan's language on this matter is unambiguous, and so Plaintiff's reliance on statements to the contrary cannot be reasonable.  (Id. at 18–19.)

25

The Court does not agree with Defendants that the Plan unambiguously answers the question of whether Plaintiff's Final Paycheck Compensation should have been included in the calculation of his early retirement benefit.  While Defendants rely heavily on Section 2.2, that provision does not provide the support they claim.  Plaintiff does not dispute that he stopped accruing benefits after his termination; rather, Plaintiff's argument is that his Final Paycheck Compensation was *accrued prior* to his termination and should therefore be included as "Compensation" even though it was *paid after* his termination.  (Dkt. # 10 at 15–16.)  Defendants' argument that the Plan unambiguously bars post-termination accrual, then, is largely immaterial.  And, upon its review of the Plan's language, the Court finds that the Plan is, at a minimum,[12] ambiguous with respect to the inclusion of the Final Paycheck Compensation.  Therefore, the rule that reliance cannot be reasonable in the face of inconsistent, unambiguous Plan language does not apply here.

In the absence of such language, Plaintiff need only sufficiently allege reasonable reliance.  He has done so here.  In his Amended Complaint, Plaintiff asserts that he had "almost weekly" meetings with Perez (a then-Pension Committee member) and Johnson.  (Dkt. # 8 at ¶ 53.)  In these meetings, Johnson

---

[12] Indeed, although it does not so hold at this time, the Court tends to agree with Plaintiff that the Plan's terms appear to favor his interpretation.

26

and Perez told Plaintiff that his Merger Compensation would be included in the early retirement benefit calculation and that the "plain language and intent of the NQDB Plan [was] to include all income earned during employment and reported on Form W-2." (Id.)  Johnson even assured Plaintiff that no future Plan administrator "could, in good faith, interpret the NQDB Plan in any other way." (Id.)  These representations were confirmed again and again by Defendants' agents and officers and National Western's outside counsel.  (Id. at ¶¶ 55–57.)  In reliance on these statements, Plaintiff refrained from exercising his vested LTI awards.  (Id. at ¶ 58.)  Thus, in light of the Plan's ambiguity on this issue, Plaintiff has adequately pleaded reasonable reliance.

ii.    Detrimental

Plaintiff has also sufficiently alleged detrimental reliance.  Plaintiff asserts that, in reliance on Defendants' representations, he chose not to exercise approximately $44 million in accrued and vested LTI awards.  (Dkt. # 8 at ¶¶ 12, 55, 58, 165.)  He alleges that, in the absence of these representations, "he would have exercised his vested LTI awards for payment prior to the merger to ensure that these amounts would have been included in the calculation of his Compensation under the NQDB Plan."  (Id. at ¶ 165.)  And, by not exercising these LTI awards prior to the merger, Plaintiff asserts that he has lost out on hundreds of thousands of dollars a month.  (Id. at ¶¶ 9–10, 12, 58, 81, 165.)  Viewing these

27

factual allegations in the light most favorable to the Plaintiff, Plaintiff has sufficiently pleaded detrimental reliance. See Simmons, 2016 WL 3162147, at *8 ("To establish reliance, the plaintiff must have reasonably taken some action, or refrained from taking certain actions, regarding benefits ... as a result of the misrepresentation . . . The plaintiff must then demonstrate that she relied upon the misrepresentation in a way that later led to injury." (internal quotations and citation omitted)).

### 3.    Extraordinary Circumstances

Finally, Plaintiff has sufficiently alleged extraordinary circumstances. Extraordinary circumstances generally require one or more of the following: "(1) acts of bad faith; (2) attempts to actively conceal a significant change in the plan; (3) the commission of fraud; (4) circumstances where a plaintiff repeatedly and diligently inquired about benefits and was repeatedly misled; or (5) an especially vulnerable plaintiff." Brown, 975 F. Supp. 2d at 625-26. "The mere failure to abide by plan terms or to fulfill written or oral assurances does not constitute extraordinary circumstances." Id. at 626; see also High v. E-Sys. Inc., 459 F.3d 573, 580 n.3 (5th Cir. 2006) (discussing examples of when the extraordinary circumstances element is and is not met).

At this stage, Plaintiff has adequately pleaded acts of bads faith and circumstances where Plaintiff diligently inquired about benefits and was repeatedly

28

misled.  In his Amended Complaint, Plaintiff alleges that he repeatedly sought assurances and documentation of his projected early retirement benefit so as to make an informed decision about whether to exercise his LTI awards.  (Dkt. # 8 at ¶ 163.)  Each time, Plaintiff was assured that he should not worry and that the Merger Compensation would be included in his retirement benefit calculation.  (Id.)

However, Plaintiff asserts that, after the merger closed, Defendants worked to cheat Plaintiff out of his promised pension benefits in order to further their own self interests.  (Id. at ¶¶ 9, 75–76, 166.)  Specifically, Plaintiff alleges that sometime after the merger, "National Western purported to dismiss the Pension Committee previously and properly appointed by the company's Board of Directors and to replace it with the NQP Committee made up of three of Prosperity's top executives."  (Id. at ¶ 13.)  This committee then acted to terminate the prior Plan Actuary, CBIZ, and engage another provider, Milliman.  (Id. at ¶ 77.)  After they did so, the NQP Committee decided to instruct Milliman on how to calculate Plaintiff's NQDB Plan benefit payment, instead of adhering to the usual practice of soliciting the actuary's advice about how to calculate benefit payments.  (Id. at ¶ 79.)  This was done, Plaintiff alleges, to try to find a way out of paying him the promised pension benefits.  (Id. at ¶ 75.)

29

Plaintiff further asserts that Defendants acted in bad faith by, *inter alia*, "interfering, without authority, with the Plan Administrator's instructions to the payroll department regarding Plaintiff's remuneration and applicable Medicare tax withholdings; . . . the NQP Committee members furthering their own self interests in denying Mr. Moody's claims while acting under flagrant conflicts of interest; . . . retroactively altering NQP Committee meeting minutes after their approval to manipulate the administrative record; . . . [and] failing to obtain good faith, neutral professional legal and actuarial advice[.]" (Dkt. # 8 at ¶ 166; see id. at ¶¶ 75–79, 125–37.)  Accepting all well-pleaded facts as true and viewing them in the light most favorable to Plaintiff, Plaintiff has satisfied the "extraordinary circumstances" element at this early stage of the proceedings.

Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss as to Plaintiff's Count II.  Plaintiff may not bring Count II pursuant to Section 502(a)(3) but may bring Count II pursuant to federal common law.[13]

---

[13] Defendants ask the Court to bifurcate this matter should the Court decline to dismiss Plaintiff's ERISA estoppel claim due to the waste of judicial resources inherent in permitting discovery where resolution of the benefits claim could render the estoppel claim unnecessary.  (Dkt. # 12 at 6, citing Brennan v. HCA, Inc. Health and Welfare Benefits Plan, No. 15-cv-276, 2016 WL 11578914, at *4, 6 (W.D. Tex. July 15, 2016).)  While the Court understands Defendants' concerns, it respectfully declines Defendants' invitation to do so at this time.

II.    Count III: Denial of Full and Fair Review Under ERISA Section 503

As his third cause of action, Plaintiff brings a claim for denial of a full and fair review under ERISA Section 503 against the NQDB Plan and "National Western."[14] (Dkt. # 8 at 59.) Plaintiff alleges that the NQDB Plan and NWLIC failed to give a full and fair review in good faith because they "prejudged [Plaintiff's] claim for benefits . . . and intentionally structured the benefits determination in a manner that ensured that his claim to benefits would be denied." (Id. at ¶ 169.) Plaintiff further states that Defendants "twice reviewed their own prior determinations, without engaging neutral professional opinions to inform their analysis," arbitrarily refused to credit evidence provided by Plaintiff, did not engage in a good faith exchange of information with Plaintiff, and failed to provide Plaintiff with documentation of their benefit determination. (Id. at ¶¶ 169–74.) Accordingly, Plaintiff seeks to have his denial of benefits set aside, or in the alternative, remand to the NQP Committee. (Id. at ¶ 176.)

Section 503 of ERISA provides that "every employee benefit plan shall . . . afford a reasonable opportunity to any participant whose claim for

---

[14] It is not clear to the Court whether Plaintiff uses "National Western" here in reference to NWLIC only or to NWLIC and NWLGI jointly. (See Dkt. # 8 at 59–64.) However, it appears that Plaintiff asserts this claim against NWLIC only. (See id. at ¶ 177.) Accordingly, for the sake of precision and consistency throughout the Court's order, the Court will refer to the second defendant in Count III not as "National Western" but as "NWLIC."

benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133. Section 503 and its corresponding regulations require that the Plan "(1) provide adequate notice; (2) in writing; (3) setting forth the specific reasons for such denial; (4) written in a manner calculated to be understood by the participant; and (5) afford a reasonable opportunity for a full and fair review by the administrator." Omega Hosp., LLC v. United Healthcare Servs., Inc., 345 F. Supp. 3d 712, 740 (M.D. La. 2018) ("Omega I") (citation and internal quotation marks omitted). Generally, the appropriate remedy for failure to comply with ERISA's procedural requirements is to "[r]emand to the plan administrator for full and fair review." Lafleur v. La. Health Serv. & Indem. Co., 563 F.3d 148, 157 (5th Cir. 2009).

Defendants move to dismiss Count III, arguing that: (1) Count III must be dismissed as to NWLIC[15] because NWLIC is an improper defendant; and (2) Count III must be dismissed against both the NQDB Plan and NWLIC because the Section 503 claim is duplicative of Plaintiff's Section 502(a)(1)(B) claim. (Dkt. # 9 at 19–21.) The Court will analyze each argument in turn.

---

[15] Again, although Defendants refer to the defendant in this Count as "National Western," the Court uses NWLIC here. (See Dkt. # 9 at 6 (defining "National Western" as referencing NWLIC).)

A.    NWLIC as a Party Defendant

Defendants contend that Count III of the Amended Complaint must be dismissed as to NWLIC because ERISA Section 503 does not impose obligations on employers but only on the Plan itself.  (Dkt. # 9 at 19–21.)  Therefore, as NWLIC is not the Plan, it is not a proper defendant.  (Id.)

"Within the Fifth Circuit, district courts have found that the ERISA Plan, itself, is the only proper defendant in a Section 503 claim."  Omega I, 345 F. Supp. 3d at 741 (collecting cases).  Plaintiff asserts, however, that in this case, he has alleged that the "plan" is a fiction.  (Dkt. # 10 at 17.)  That is to say, according to Plaintiff, the NQDB Plan is "an unfunded 'top-hat' plan that has no meaningful existence apart from [NWLIC]."  (Id.)  As such, he can bring his Section 503 claim against NWLIC.  (Id. at 17–19.)

Regardless of whether or not Plaintiff is correct that he can bring a Section 503 claim against an employer under these circumstances,[16] Plaintiff has

---

[16] Existing authority does not clearly answer this question.  Although the Fifth Circuit has allowed ERISA plan beneficiaries to bring claims against an entity other than the plan, the plaintiffs in those cases have brought claims under Section 502, not Section 503.  See Musmeci v. Schwegmann Giant Super Markets, Inc., 332 F.3d 339, 350 (5th Cir. 2003) (allowing a Section 502(a)(1)(B) claim against an employer to proceed where the employer was the plan administrator, the plan had no meaningful existence separate from the employer, the plan was funded from the general assets of the employer, and it was the employer's decision to deny plan benefits); Dwyer v. United Healthcare Ins. Co., 115 F.4th 640, 646, 649–50 (5th Cir. 2024) (allowing a Section 502(a)(1)(B) claim to proceed against the plan administrator); Robinson v. Aetna Life Ins. Co., 443 F.3d 389, 395, 397 (5th Cir.

not pleaded sufficient facts to support his assertion that the NQDB Plan is a "top hat" plan, or that NWLIC is, in actuality, the "Plan."

In his Amended Complaint, Plaintiff alleges that the "NQDB Plan is unfunded, and all benefits paid pursuant to the NQDB Plan are paid by [NWLIC]." (Dkt. # 8 at ¶ 177.)  Therefore, "the NQDB Plan has no meaningful existence apart from [NWLIC] and the NQDB Plan is, in effect, [NWLIC]."  (Id. at ¶¶ 177, 20.) While the Court accepts all well-pleaded facts as true and views them in light most

---

2006) (same).  While the Court recognizes that the Fifth Circuit's reasoning in Musmeci could arguably extend here, Plaintiff cites no authority demonstrating that courts have applied it in this context.  To the contrary, courts in the Fifth Circuit routinely dismiss Section 503 claims against non-plan entities at the motion to dismiss stage.  See, e.g., Soileau & Assocs., LLC v. Louisiana Health Serv. & Indem. Co., No. CV 18-710-WBV-JCW, 2019 WL 4521167, at *5–6 (E.D. La. Sept. 19, 2019) (dismissing a Section 503 claim against an insurer despite allegations that the insurer was the plan administrator and plan fiduciary and that the insurer had the sole authority to interpret the plan at issue); Omega I, 345 F. Supp. 3d at 741 (collecting cases); but see Texas Gen. Hosp., LP v. United Healthcare Servs., Inc., No. 3:15-CV-02096-M, 2016 WL 354182, at *10 (N.D. Tex. June 28, 2016) (declining to dismiss a Section 503 claim against insurance companies where the insurance companies acted as the plan administrators and fiduciaries of the plan and noting that "[w]hether, in fact, either [defendant] is 'the plan'" could be resolved at summary judgment").  Nonetheless, the Court appreciates Plaintiff's proffered rationale for permitting Section 503 claims to proceed against non-plan entities—particularly where the plan is a "top hat" plan— and does not foreclose the possibility that, in an appropriate case, a plaintiff could proceed on that basis.  See Texas General, 2016 WL 354182, at *10 (suggesting that the Section 503 claim could proceed against the plan administrator where the plaintiffs argued that their allegations established that the administrator is "akin with the plan[]"); Omega I, 345 F. Supp. 3d at 741 (dismissing a Section 503 claim against the plan administrator where the plaintiff did not allege that the administrator is "the plan").

34

favorable to the plaintiff at this stage, the plaintiff still must plead "specific facts,

not mere conclusory allegations." Tuchman, 14 F.3d at 1067. Here, although on

the line, the Court finds that Plaintiff's allegations are not more than conclusory

assertions and that, additionally, Plaintiff has not sufficiently pleaded that the

NQDB Plan is indeed a "top hat" plan. See id.; see also Tolbert v. RBC Cap.

Markets Corp., 758 F.3d 619, 627 (5th Cir. 2014) (explaining that a "top hat" plan

is a plan that is unfunded, but also a plan that is "maintained primarily for the

purpose of providing deferred compensation for a select group of management or

highly compensated employees" (internal quotations and citation omitted)).

Accordingly, the Court will dismiss Count III as to NWLIC[17] without prejudice

and with leave to amend.

B.     Duplicative Claim

Defendants next argue that, similar to Plaintiff's Count II, Plaintiff's

Count III is duplicative of his denial of benefits claim in Count I and therefore

must be dismissed. (Dkt. # 9 at 21.) They assert that Plaintiff alleges no separate

injury stemming from a denial of process and instead uses Section 503 "as a

second vehicle to reargue the Committee's benefit decision." (Id.) Thus, under

Fifth Circuit and Supreme Court precedent, Plaintiff's Section 503 claim cannot

---

[17] To the extent that Plaintiff intended to assert Count III against NWLGI and
NWLIC, the Court's analysis and conclusion still apply.

proceed.  (Id.)  Plaintiff contends that Defendants' argument is controverted by recent Fifth Circuit authority.  (Dkt. # 10 at 19, citing Dwyer v. United Healthcare Ins. Co., 115 F.4th 640, 647 (5th Cir. 2024).)  In Dwyer, the Fifth Circuit explained that failure to comply with Section 503's requirement of a full and fair review "represents an independent basis to overturn a plan administrator's denial of benefits."  115 F.4th at 650 (internal quotations and citation omitted).  Based on this language in Dwyer, Plaintiff asserts that a Section 503 claim can be asserted at the same time as a Section 502(a)(1)(B) claim.  (Dkt. # 10 at 19.)

There appear to be multiple vehicles by which to bring a denial of full and fair review claim.  See Dwyer v. United Healthcare Ins. Co., No. 1:17-CV-439, Dkt. # 1 (May 11, 2017) (plaintiff brought denial of full and fair review as part and parcel of the denial of benefits claim); Wade v. Hewlett-Packard Dev. Co. LP Short Term Disability Plan, 493 F.3d 533 (5th Cir. 2007), abrogated on other grounds by, Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242, 130 S.Ct. 2149, 176 L.Ed.2d 998 (2010) (plaintiff brought denial of full and fair review claim as part of Section 502(a)(1)(B) claim); Clement v. Lumen Health Care Benefit Plan, No. CV 3:24-00104, 2025 WL 3213781 (W.D. La. Oct. 31, 2025), report and recommendation adopted, No. 3:24-CV-00104, 2025 WL 3209025 (W.D. La. Nov. 17, 2025) (same); Omega Hosp., LLC v. United HealthCare Servs., Inc., No. CV 16-560-JWD-EWD, 2020 WL 7049857, at *30 (M.D. La. Dec. 1, 2020) ("Omega

36

II") (explaining that under Manuel, 905 F.3d 859, a plaintiff can bring procedure-related claims under Section 502(a)(1)(B)); Sky Toxicology, 2018 WL 4211741, at *5–6 (plaintiff brought denial of full and fair review claim pursuant to Section 502(a)(3)); Windmill Wellness Ranch, 2020 WL 7017739, at *6 (same); Soileau & Assocs., LLC v. Louisiana Health Serv. & Indem. Co., No. CV 18-710-WBV-JCW, 2019 WL 4521167, at *5 (E.D. La. Sept. 19, 2019) (plaintiff brought denial of full and fair review claim pursuant to Section 503); Omega I, 345 F. Supp. 3d at 740–41 (same).

It is true that, if Plaintiff had brought his denial of full and fair review claim pursuant to Section 502(a)(3), our Circuit's precedent would require dismissal of that claim. Manuel, 905 F.3d at 867, 864–65 (analyzing the plaintiff's Section 502(a)(3) denial of full and fair review claim and stating that "the district court should have considered whether [the plaintiff's] alleged injury creates a cause of action under [Section 502(a)(1)(B)]"); see Sky Toxicology, 2018 WL 4211741, at *5–6 (dismissing Section 502(a)(3) denial of full and fair review claim as duplicative of the Section 502(a)(1)(B) claim); Windmill Wellness Ranch, 2020 WL 7017739, at *6 (same); William J. v. BlueCross BlueShield of Texas, No. 3:22-CV-1919-G, 2023 WL 3635640, at *8–9 (N.D. Tex. May 24, 2023) (same). However, here, Plaintiff brings his denial of full and fair review claim pursuant to

37

Section 503.[18]  And it is not clear that, in this context, the rule barring duplicative claims applies.  See Soileau, 2019 WL 4521167, at *3–6 (dismissing the plaintiffs' Section 502(a)(3) claims as duplicative but analyzing the Section 503 denial of full and fair review claim without considering whether it was similarly duplicative); Texas General, 2016 WL 354182, at *10 (allowing the plaintiffs' Section 503 denial of full and fair review claim to proceed alongside the Section 502(a)(1)(B) denial of benefits claim without considering whether it was duplicative); see also Dwyer, 115 F.4th at 646, 650 (explaining that failure to comply with Section 503's requirement of a full and fair review "represents an independent basis to overturn a plan administrator's denial of benefits.").  Accordingly, for the same reasons outlined in relation to Plaintiff's common law ERISA estoppel claim, the Court will not, at this stage, dismiss Plaintiff's Count III as duplicative of his denial of benefits claim.  See supra II. A.

---

[18] The Court notes that the Fifth Circuit has not definitively spoken on whether a denial of full and fair review claim can truly be brought via Section 503 rather than via ERISA's civil enforcement provisions laid out in Section 502.  See 29 U.S.C. § 1132(a).  Even so, a number of district courts have allowed plaintiffs to bring this type of claim under Section 503, separate and apart from Section 502.  See Omega I, 345 F. Supp. 3d at 740–41 (explaining that in its review of Fifth Circuit jurisprudence, Section 503 does not create a right of action for compensatory relief but does allow for equitable relief); Soileau, 2019 WL 4521167, at *5–6 (rejecting the defendant's argument that the plaintiffs could not bring a claim under Section 503 because the plaintiffs were not seeking monetary relief).

The Court therefore **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss as to Plaintiff's Count III.  Count III is dismissed without prejudice as to NWLIC but remains as to the NQDB Plan.

<u>CONCLUSION</u>

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss Plaintiffs' Counts II and III. (Dkt. # 9.)  Plaintiff may not bring Count II pursuant to Section 502(a)(3) but may bring Count II pursuant to federal common law.  Plaintiff's Count III is dismissed without prejudice as to NWLIC but remains as to the NQDB Plan.

**IT IS SO ORDERED.**

**DATED**: Austin, Texas, March 26, 2026.

_____
David Alan Ezra
Senior United States District Judge

39